**David H. Griggs, OSB No. 982436**
e-mail: david@griggslawpc.com
GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Telephone:  (971) 228-8110
Fax:  (971) 327-6735

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **DR. YONGLI ZHANG,** | ) Case No.: 6:18-cv-00232-TC |
| | ) |
| Plaintiff, | ) **AMENDED COMPLAINT** |
| | ) Complaint for Violations of Title VII, 42 |
| v. | ) U.S.C. § 2000e; Or. Rev. Stat. Ann. § |
| | ) 659A.030 *et seq*; 42 U.S.C. § 1981, § 1983; |
| **UNIVERSITY OF OREGON,  and** | ) Oregon Whistleblower Protection Act, ORS |
| **YUE FANG,** | ) 659A.200 *et seq*; and Oregon Common Law |
| | ) on Breach of Contract |
| Defendants. | ) |
| | ) **JURY TRIAL REQUESTED** |
| | ) |
| | ) |
| | ) |
| | ) |

## SUPPLEMENTAL CIVIL COMPLAINT FOR
## MONETARY RELIEF AND DEMAND FOR JURY TRIAL

1.

Plaintiff Dr. Yongli Zhang ("Zhang" or "Plaintiff") by and through his attorneys, files this

complaint against the University of Oregon ("UO") and Dr. Yue Fang ("Fang") (collectively, the

"Defendants") for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e ("Title

VII"); Or. Rev. Stat. Ann. §§ 659A.030 *et seq*; 42 U.S.C. §§ 1981 & 1983; Oregon

Whistleblower Protection Act, Or. Rev. Stat. Ann. §§ 659A.200 *et seq*; and the Oregon Common

1 – AMENDED COMPLAINT

Law on Breach of Contract.  Defendants in this matter, jointly and severally, denied Zhang's

tenure application because of his Asian race and national origin, as well as in retaliation for his

opposition to discrimination, all in violation of law.

## JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §

3732(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

3.

Zhang has exhausted the administrative remedies available to him under 42 U.S.C. § 2000e, *et

seq*.  Zhang cross-filed his charge of discrimination with the EEOC Seattle field office and the

Oregon Bureau of Labor and Industries ("BOLI") on October 2, 2017.  Zhang designated BOLI

to conduct the investigation into his charge.  On January 2, 2018, BOLI issued Zhang a Notice of

Right to File a Civil Suit. On February 5, 2018, the EEOC issued Zhang a Notice of Right to File

a Civil Suit.

4.

This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a)

because UO is headquartered in and conducts business within this judicial district, and because

Fang resides in this judicial district.

5.

Venue is proper in this Court under 28 U.S.C. § 1391(c), 1395(a), and 31 U.S.C. §

3732(a) because the complained of illegal acts occurred within this judicial district.

/ / /

/ / /

2 – AMENDED COMPLAINT

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

## THE PARTIES

### PLAINTIFF DR. YONGLI ZHANG

6.

Zhang is a Chinese-American who was born in China and immigrated to the United States when he was 27.

7.

He speaks English with a Chinese accent.

8.

In 1996, he obtained a Bachelor of Science degree in Management Science from the University of Science and Technology of China.

9.

He then moved to the United States and in 2003, obtained a Master of Science in Statistics from Ohio State University.

10.

In 2007, he obtained his PhD in Statistics from the University of Minnesota.

11.

His specializes in statistics with a focus on big data.

### DEFENDANT UNIVERSITY OF OREGON ("UO")

12.

UO is a public university located in Eugene, Oregon.

13.

Charles H. Lundquist College of Business ("LCB") is UO's business school.

/ / /

3 – AMENDED COMPLAINT

14.

The Department of Operations and Business Analytics ("OBA") is one of five

departments within the LCB.

15.

During the time period relevant to this complaint, Dr. Sergio Koreisha ("Dr. Koreisha")

served as the chair of OBA.

**DEFENDANT DR. YUE FANG**

16.

Fang is an associate professor of statistics at OBA and an employee of UO.

17.

Like Zhang, Fang is also Asian-American and is of Chinese national origin.

18.

During Zhang's tenure application in 2015, Zhang and Fang were the only two statistics

professors in OBA who were Asian with a Chinese national origin.

19.

Fang was one of the three members in the Faculty Review Committee that reviewed

Zhang's tenure application.

20.

Fang was the only member in that committee who specialized in statistics.

/ / /

/ / /

/ / /

/ / /

4 – AMENDED COMPLAINT

## FACTUAL ALLEGATIONS

### ZHANG'S EMPLOYMENT HISTORY AT UO

21.

In July 2009, Zhang joined UO as a visiting assistant professor in the OBA Department within LCB.

22.

In September 2010, Zhang became a Tenure Track Assistant Professor at UO.

23.

On or about April 23, 2014, UO issued Zhang a Reappointment Recommendation letter ("Reappointment Letter") that renewed Zhang's contract for an additional two (2) years, with the expectation that Zhang was to be evaluated for tenure in the 2015-2016 academic year.

24.

The Reappointment Letter from 2014 also stated that "a favorable tenure decision" would result if two of Zhang's research papers under review at the time - one on Adaptive Data Perturbation and the other on High Dimensional Data Analysis - were selected for publication in the *Journal of Business and Economic Statistics* and the *Journal of the American Statistical Association* respectively.

25.

Indeed, by the time of Zhang's review, *Journal of Business and Economic Statistics* selected Zhang's paper on Adaptive Data Perturbation for publication.

26.

As for Zhang's research paper on High Dimensional Data Analysis, the *Journal of the American Statistical Association* did not select that paper for publication.

5 – AMENDED COMPLAINT

27.

Zhang, however, he did get a paper on Cross-Validation for Procedure Selection published in *the Journal of Econometrics*.

28.

As of June 2016, Google Scholar ranked the *Journal of Econometrics* higher than the *Journal of the American Statistical Association*. In other words, Zhang's publication record surpassed the rigor required by the Reappointment letter.

29.

Experts in the field of statistics rate both journals that Zhang published in - *Journal of Business and Economic Statistics* and the *Journal of Econometrics*- as "A level" journals.

30.

The LCB at UO's own policy on "Workload, Summer Support, and Research Accounts for Tenure Track Faculty" list both *Journal of Business and Economic Statistics* and the *Journal of Econometrics* as "A level journals" under the category of Business Statistics.

31.

Because two of Zhang's papers were selected for publication in two "A Level" journals in 2015, the LCB at UO awarded Zhang its Goulet Outstanding Research Award.   Zhang was the only recipient of the award that year.

32.

Zhang was confident in the prospects of his tenure application because his publication record over the previous year had exceeded the rigor required by the Reappointment Letter.

/ / /

/ / /

6 – AMENDED COMPLAINT

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

33.

Additionally, at the time of his application Zhang had five (5) publications in academic journals, two (2) papers in first-round review, and one (1) working paper being readied for submission.  Zhang also had an additional seven (7) research projects in his research pipeline.

34.

In or about July 2015, after months of preparation, Zhang submitted his tenure application for review.

**YUE FANG'S DISCRIMINATORY CONDUCT**

35.

Fang had already obtained his tenure status at UO in 2002.

36.

Since then, for about 15 years, Fang had not published any significant research to elevate him to the position of full professor.

37.

Fang took advantage of his and Zhang's shared national origin, and Fang's important position as a fellow faculty member in the OBA Department, to make unethical, demeaning, and discriminatory demands from Zhang.

38.

In or around December 2009, Fang forced Zhang to complete a high school science project for Fang's son.

/ / /

/ / /

/ / /

7 – AMENDED COMPLAINT

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

39.

In or around October 2010, Fang forced Zhang to falsely include Fang's high school-aged daughter's name in the enrollment list in one of Zhang's classes so that Fang's daughter could earn college credit without attending the class.

40.

In or around July 2010, Fang forced Zhang to loan him about $40,000 which Fang said he needed to complete the purchase of a new home.

41.

Fang targeted Zhang for these unethical demands because of their shared Chinese national origin and Asian racial background.  Fang also knew that Zhang could not refuse these requests and risk Fang's opposition to Zhang's tenure and promotion application.

42.

The Chinese culture that Zhang grew up in required a respect for elders and senior colleagues.

43.

Further, because of the small size of the Chinese-American community, Fang knew that the more recent immigrants like Zhang tend to rely on more established immigrants like Fang for guidance and assistance in navigating the American workplace.

44.

Fang took advantage of this power dynamic to secure Zhang's compliance.

45.

Fang never made similar demands from colleagues without a Chinese national origin and without an Asian racial background.

8 – AMENDED COMPLAINT

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

46.

Additionally, Fang also served on the Faculty Review Committee for tenure applications, and often reminded Zhang of Fang's position and influence over the decision regarding Zhang's tenure application.

47.

Fang exploited his shared cultural background and his position on the Faculty Review Committee in order to compel Zhang to fulfil Fang's unethical demands.

48.

Seeking to bolster Fang's weak research record, Fang attempted to compel Zhang to add Fang's name as a co-author on Zhang's single-author research paper.  Zhang was confident that the paper would be published in an "A level" scientific journal.

49.

Seeking to protect his academic integrity, Zhang refused to credit Fang for research that Fang had no involvement in.

50.

Because Fang was upset at Zhang's refusal and because Zhang's conduct no longer fit Fang's stereotype of a subservient Chinese immigrant, Fang used his influence to deny Zhang's tenure application.

THE TENURE APPLICATION PROCESS

51.

As part of UO's tenure review process, UO first seeks input from highly qualified experts in the tenure candidate's field from outside UO.

/ / /

9 – AMENDED COMPLAINT

52.

Next, the Faculty Review Committee from the candidate's own department conducts a review of the candidate's tenure application.  This Faculty Review Committee also considers the recommendations of the external reviews before preparing a report with the Faculty Review Committee's own recommendation on tenure.

53.

The department head then prepares a report and a recommendation on tenure before forwarding the entire file to the appropriate Dean.

54.

Next, a College-level Faculty Personnel Committee conducts a review of the candidate's tenure application and prepares an independent report for the Dean.

55.

The Dean then uses that information to prepare a report and a recommendation on tenure.

56.

The Dean also meets with the candidate to review all the recommendations regarding the candidate's tenure application.

57.

The Provost then reviews the candidate's file for completeness before sending the file to the University Faculty Personnel Committee ("UFPC") for review.

58.

The UFPC then reviews the file and prepares a report to include its own recommendation.

/ / /

/ / /

10 – AMENDED COMPLAINT

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

59.

Finally, the Provost receives the candidate's tenure application along with every recommendation.  The Provost then makes a decision to award or deny tenure.

60.

Zhang's tenure review process included about seven (7) external reviewers and a three-person Faculty Review Committee.

61.

The Faculty Review committee included only one actual statistician, Fang.  The other two committee members, Nagesh Murthy and Zhibin Yang, were not statisticians.

62.

The external reviewers, however, were all statisticians.

63.

UO also included a "cohort analysis" in Zhang's tenure review, which included eight (8) faculty members from other business schools at other universities.

64.

UO did not use a cohort analysis for previous tenure applications.

65.

The "cohort analysis" is not part of the standard promotion protocols at the LCB.

**FANG MISLEAD THE DEPARTMENT'S FACULTY REVIEW COMMITTEE INTO DENYING ZHANG'S APPLICATION FOR A PROMOTION TO A TENURED POSITION**

66.

In or about October 2015, the OBA Department Chair, Dr. Koreisha, based on his conversation with the department Faculty Review Committee, asked Zhang to withdraw Zhang's tenure application.

11 – AMENDED COMPLAINT

67.

When Zhang asked about the external reviewers, Dr. Koreisha refused to disclose that information declaring it was a secret.  Zhang would later learn that all the external reviewers were favorable of Zhang's tenure application.

68.

Nevertheless, Dr. Koreisha's advice still confused Zhang because, given Dr. Koreisha's previous advice, Zhang's recent publications, and Zhang's Goulet Outstanding Research Award by the college, Zhang was in a strong position for tenure.

69.

Accordingly, Zhang ignored Dr. Koreisha's advice.

70.

On December 4, 2015, the OBA Department's Faculty Review Committee led by Fang recommended denying Zhang's tenure application.

71.

In its decision letter, the Department's Faculty Review Committee acknowledged that "the high quality of Dr. Zhang's research has been shared by all external reviewers," and that "all [external] reviewers have offered support for promotion."

72.

Nevertheless, the Faculty Review Committee disregarded the recommendations of the seven (7) external reviewers despite the fact that the external reviewers' field of expertise more closely mirrored Zhang expertise than the expertise of the Faculty Review Committee.

/ / /

/ / /

12 – AMENDED COMPLAINT

73.

The Faculty Review Committee criticized Zhang's supposed lack of productivity because Zhang had only two (2) publications in premier applied statistics journals.

74.

The Faculty Review Committee ignored that Zhang was told, in the Reappointment Letter, that he only required two (2) premier publications.

75.

Additionally, UO had granted tenure to the previous applicant who did not have two (2) publications in "A level" journals.

76.

The Faculty Review Committee also criticized Zhang's work because Zhang's papers were published in premier *applied* statistics journals, and not in premier *general* statistics journals.

77.

The Faculty Review Committee used this distinction between applied and general statistics to arbitrarily downgrade the quality of the journals in which Zhang published.

78.

Zhang had never previously been informed of or even heard of such a categorization or preference between statistics journals.

79.

Additionally, UO had previously awarded tenure to faculty members who did not have any publications in general statistics journals.

/ / /

13 – AMENDED COMPLAINT

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

80.

Further, the Reappointment Letter from 2014 did not include this distinction in its criteria.  In fact, as explained *supra*, the Reappointment Letter stated that Zhang would receive a favorable tenure decision if two of his publications under review at the time were selected for publication.

81.

At the time of the Reappointment letter, one of those papers being reviewed, was for publication in the *Journal of Business and Economic Statistics*; a journal that the Faculty Review committee now downgraded by labeling it an "applied statistics journal."

82.

Moreover, due to the nature of Zhang's work and because Zhang had applied for a promotion at the OBA Department within the LCB, applied statistics journals were a more appropriate venue for Zhang's research.

83.

As the only statistics professor on the Faculty Review Committee, Fang successfully mislead the two other committee members to adopt this new and unsupported categorization of statistic journals.

84.

This new categorization of statistics journals unjustifiably diminish the quality of the journals in which Zhang published.

85.

The Faculty Review Committee then used this supposed "lack of productivity as per current publication record" to decline recommending Zhang for promotion to a tenured position.

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

86.

The Faculty Review Committee's decision to conjure up distinctions between statistics journals confused other tenure review committees who relied primarily on the subject matter expertise of the Faculty Review Committee.

87.

The Faculty Review Committee, under Fang's lead, also used a new "cohort analysis" specifically designed to nullify the unanimous support Zhang received from the external reviewers.

88.

The "cohort analysis" involved comparing Zhang's research record with a selection of scholars from other universities.

89.

The Faculty Review Committee, under Fang's lead, cherry-picked nationally renowned scholars such that Zhang's research record, as a junior faculty researcher, would appear weak.

90.

Further, the Faculty Review Committee only selected a small sample of eight (8) outside scholars and deliberately ignored reputable statisticians whose research records would compare favorably to Zhang's research record.

### RELYING ON FANG'S MISCHARACTERIZATION OF ZHANG'S RESEARCH RECORD, THE UNIVERSITY OF OREGON DENIED TENURE

91.

After the OBA Department's Faculty Review Committee reviewed Zhang's tenure application, the application was next taken up for review by the College-Level Faculty Personnel Committee.

15 – AMENDED COMPLAINT

92.

None of the members of the College-Level Faculty Personnel Committee were

statisticians.

93.

The Faculty Review Committee's decision to conjure up distinctions between statistics

journals confused all five members of the College-Level Faculty Personnel Committee.

94.

Consequently, the College-Level Faculty Personnel Committee assumed that Zhang have

no legitimate A-level publications.

95.

A College-Level Faculty Personnel Committee member, Dr. Mike Pangburn, consulted a

reputable statistician about the reputation of the journals that Zhang published in and concluded

"two of the journals Yongli [Zhang] has published in are indeed considered by some as legitimate

A's."

96.

The College-Level Faculty Personnel Committee, however, instead of resolving this

discrepancy over journal categorizations, instituted another arbitrary categorization to diminish

the reputation of the journals in which Zhang published.

97.

Specifically, the College-Level Faculty Personnel Committee labeled the journals Zhang

published in as "Group 2" which similarly diminished the quality of Zhang's research record.

/ / /

/ / /

16 – AMENDED COMPLAINT

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

98.

The College-Level Faculty Personnel Committee also asked the Faculty Review
Committee to clarify whether there were cases in Zhang's favor that were excluded in the
"cohort analysis."

99.

Despite the Faculty Review Committee's lack of a responsive answer, the College-
Level Faculty Personnel Committee did not pursue the issue further.

100.

Zhang later learned that there were cases in Zhang favor, but not included in the "cohort
analysis."

101.

The College-Level Faculty Personnel Committee recommended denying tenure primarily
on Zhang's supposed lack of "Group 1 publications."

102.

In February 5, 2016, the Interim Dean of the college, Jim Terborg, agreed with the
College-Level Faculty Personnel Committee decision and recommended denying tenure. The
Zhang tenure application then proceeded to the University Faculty Personnel Committee
("University Committee").

103.

Unlike the previous two review committees, the University Committee did recommend
Zhang for a promotion to a position with tenure.

/ / /

/ / /

17 – AMENDED COMPLAINT

104.

On May 4, 2016, Provost Scott Coltrane ignored the recommendation the University
Committee and relied instead on the recommendation of the Dean and the Faculty Review
Committee, and denied Zhang's application for tenure.

105.

Zhang then asked for and received the Zhang tenure review file.  Upon reading his tenure
review file, Zhang learned for the first time that the University Faculty Personnel Committee, in
opposition to the Faculty Review Committee, had recommended granting tenure to Zhang.

106.

In support of its decision to recommend tenure for Zhang, the University Committee
pointed out the following problems with the Faculty Review Committee's report:

      a.      The tenure criteria outlined by the department were vague;

      b.      The standard regarding the quality of publication and the quality of
journals does not appear in the tenure standard, resulting in Zhang
application "being held to a different standard than [Zhang] was led to
believe"; and

      c.      The Faculty Review committee did not place sufficient weight on
the opinion of the external reviewers despite the fact that the expertise of
the external reviewers matched Zhang's area of expertise more closely
than the expertise of the internal reviewers.

/ / /

/ / /

/ / /

18 – AMENDED COMPLAINT

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

## ZHANG APPEALED UO'S DECISION TO DENY TENURE

### 107.

On July 15, 2016, Zhang submitted a written appeal letter to the Promotion and Tenure Review Appeal Committee ("PTRAC").

### 108.

In the letter to PTRAC Zhang pointed out that all the external reviewers and the University Faculty Personnel Committee supported Zhang's application for tenure.

### 109.

Zhang also pointed out that the Faculty Review Committee had unjustifiably diminished the quality of the journals in which Zhang had published.

### 110.

Finally, Zhang also directed PTRAC's attention to the fact that previous tenure applicants were not held to the same elevated standard nor did previous applicants face a "cohort review" process.

### 111.

Specifically, Zhang noted the discriminatory nature of such conduct because it was only directed towards denying a Chinese-American candidate's tenure application.

### 112.

During the ensuing hearing, the three members of the Faculty Review Committee, included Fang, vehemently declined to be interviewed separately, insisting instead to be interviewed as a group.

/ / /

/ / /

19 – AMENDED COMPLAINT

113.

PTRAC reluctantly acquiesced to these demands when all three members of the Faculty
Review committee threatened to quit if PTRAC required individual interviews.

114.

The group interview allowed the Faculty Review Committee members to coordinate their
stories and frustrated PTRAC's efforts to collect reliable information.

115.

Nevertheless, on November 18, 2016, PTRAC completed its investigation and review,
and recommended that UO grant Zhang's tenure application.

116.

On December 12, 2016, however, Provost Coltrane rejected PTRAC's recommendation.

117.

Seeing no other option, on December 21, 2016, Zhang exercised his final appeal option
and appealed his tenure denial to the University President Michael H. Schill.

118.

On January 11, 2017, the University President defended the Provost's decision and
rejected Zhang's appeal.

119.

Without tenure, Zhang's employment contract was scheduled to end around July 2017.

120.

Zhang then retained counsel and, on May 26, 2017, sent a Notice of Tort Claims letter to
the University alleging, *inter alia*, breach of contract, breach of the covenant of good faith and
fair dealing, breach of implied contract, and employment discrimination.

20 – AMENDED COMPLAINT

121.

The letter also informed UO about the Faculty Review Committee's conduct including that "some of whom [on the Faculty Review Committee] made unethical request of Dr. Zhang which he refused."

122.

The letter also pointed out UO's disparate treatment when UO recently granted tenure to a Caucasian professor of British national origin who did not have any "A level" publications, but UO denied Zhang's tenure application.

123.

Nevertheless, UO took no action to investigate or resolve the matters Zhang presented in the May 26, 2017 letter.

124.

UO let Zhang's employment contract end in July 2017.


**COUNT I**
**Discrimination on the Basis of Race and National Origin**
**Title VII, 42 U.S.C. § 2000e-2**
**Or. Rev. Stat. Ann. § 659A.030 *et seq.***
**(Against Defendant University of Oregon)**

125.

Zhang incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

126.

Defendant UO is an "employer" as defined in 42 U.S.C. § 2000e.

/ / /

21 – AMENDED COMPLAINT

127.

Zhang is an "employee" as defined in 42 U.S.C. § 2000e.

128.

Zhang is an Asian-American with a Chinese national origin.

129.

Zhang was one of only two statistics professors with a Chinese national origin at the OBA Department.

130.

UO, through an unfair tenure application process spearheaded by Fang, unlawfully subjected Zhang to and tolerated discrimination against Zhang, because of his Asian race and national origin when they denied Zhang a promotion to a tenured position, based on Fang's influence over the process.

131.

Specifically, as described in detail *supra*, Fang targeted Zhang for Fang's unethical demands because of Zhang's and Fang's shared race and national origin.

132.

When Zhang finally refused to succumb to Fang's demands, Fang manipulated the tenure review process by diminishing the importance of Zhang's publication portfolio and by instituting an unfair "cohort analysis" in order to justify denying Zhang a tenured position.

133.

UO permitted and tolerated Fang's discriminatory treatment of Zhang by following Fang's recommendation to deny Zhang a promotion to a tenured position.

/ / /

22 – AMENDED COMPLAINT

134.

UO previously granted promotions to tenured positions for professors with a less

impressive research portfolio.

135.

UO's actions give rise to a reasonable inference of unlawful discrimination.

136.

Zhang has sustained damages as the result of UO's illegal discrimination in violation of

Title VII, including, but not limited to, lost wages, lost bonuses, damage to his career, and

emotional, mental, and physical distress and anxiety.

137.

Zhang is entitled to such legal or equitable relief as will effectuate the purposes of Title

VII, including but not limited to economic and compensatory damages, and reasonable costs and

attorneys' fees.

**COUNT II**
**Retaliation**
**Title VII, 42 U.S.C. § 2000e-3**
**Or. Rev. Stat. Ann. § 659A.030 *et seq.***
**(Against Defendant University of Oregon)**

138.

Zhang incorporates all of the allegations set forth in the foregoing paragraphs as though

fully alleged herein.

139.

Zhang engaged in protected activity when he:

    a.    Complained about discriminatory treatment in his July 15, 2016 appeal

        letter to PTRAC;

23 – AMENDED COMPLAINT

b.     Complained about UO's disparate treatment of his tenure application in comparison to that of a recently tenured professor in Zhang's May 26, 2017 letter; and,

c.     Complained about Fang's unethical request in the May 26, 2017 letter.

140.

Following these protected actions, UO retaliated against Zhang by denying Zhang a promotion to a tenured position and by permitting Zhang's contract to expire without the expected renewal.

141.

UO's actions give rise to a reasonable inference of unlawful retaliation due to, *inter alia*, the close temporal proximity between the protected activity and the adverse action, and the failure to conduct any sort of investigation into Zhang's allegations.

142.

Zhang has sustained damages as the result of UO's illegal retaliation in violation of Title VII, including, but not limited to, lost wages, lost bonuses, damage to his career, and emotional, mental, and physical distress and anxiety.

143.

Zhang is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

/ / /

/ / /

/ / /

24 – AMENDED COMPLAINT

**COUNT III**
**Discrimination on the Basis of Race and National Origin under Color of Law**
**42 U.S.C. § 1981 and § 1983**
**(Against All Defendants)**

144.

Zhang incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

145.

Zhang is an Asian-American and is of the Asian race and Chinese national origin.

146.

Defendants unlawfully subjected Zhang to and tolerated discrimination against Zhang, because of his Asian race and Chinese national origin when they denied Zhang a promotion to a tenured position.

147.

Specifically, as described in detail *supra*, Fang targeted Zhang for Fang's unethical demands because of Zhang's and Fang's shared race and national origin.

148.

When Zhang finally refused to succumb to Fang's demands, Fang manipulated the tenure review process by diminishing the importance of Zhang's publication portfolio and by instituting an unfair "cohort analysis" in order to justify denying Zhang a tenured position.

149.

UO permitted and tolerated Fang's discriminatory treatment of Zhang by following Fang's recommendation to deny Zhang a promotion to a tenured position.

/ / /

25 – AMENDED COMPLAINT

150.

UO's actions give rise to a reasonable inference of unlawful discrimination.

151.

Defendants, as a state university or officials or agents of a state university, acted under color of law in their discrimination of Zhang.

152.

Defendants' actions violated Zhang's § 1981 rights to make and enforce his employment contract with UO.

153.

Zhang has sustained damages as the result of Defendants' illegal discrimination in violation of Section 1981, including, but not limited to, lost wages, lost bonuses, damage to his career, and emotional, mental, and physical distress and anxiety.

154.

Zhang is entitled to such legal or equitable relief as will effectuate the purposes of Section 1981, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

**COUNT IV**
**Whistleblower Retaliation**
**ORS 659A.200 *et seq.***
**(Against Defendant University of Oregon)**

155.

Zhang incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

/ / /

26 – AMENDED COMPLAINT

156.

In the May 26, 2017 letter to UO, Zhang, via counsel, disclosed unethical requests made of Zhang by a member of the Faculty Review Committee.

157.

This constitutes an "abuse of authority" disclosure that is a protected under the Oregon Whistleblower Protection Act.

158.

Nevertheless, UO took no action and allowed the Zhang's employment contract to expire in July 2017.

159.

UO's actions give rise to a reasonable inference of unlawful whistleblower retaliation due to, *inter alia*, the close temporal proximity of the protected activity and the adverse action, and the failure to conduct any sort of investigation.

160.

Zhang has sustained damages as the result of UO's illegal retaliation in violation of Oregon Whistleblower Protection Act, including, but not limited to, lost wages, lost bonuses, damage to his career, and emotional, mental, and physical distress and anxiety.

161.

Zhang is entitled to such legal or equitable relief as will effectuate the purposes of Oregon Whistleblower Protection Act, including but not limited to economic and compensatory damages, and reasonable costs and attorneys' fees.

/ / /

/ / /

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Phone: (971) 228-8110
Fax: (971) 327-6735

**COUNT V**
**Breach of Contract in Oregon Common Law**
**(Against Defendant University of Oregon)**

162.

Zhang incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

163.

The Reappointment Letter issued on or about April 23, 2014 constitutes a valid and enforceable employment contract between Zhang and UO.

164.

As detailed *supra*, Zhang fulfilled the expectations required of him by the contract in order to obtain a promotion to a tenured position.

165.

UO breached that employment contract by:

a.     Failing to grant a favorable tenure decision despite Zhang fulfilling the expectation for journal publication;

b.     Subjecting Zhang's publication history to a new journal ranking criteria not present in the contract; and,

c.     Subjecting Zhang's tenure application to "cohort analysis" not present in the contract.

166.

As a direct and proximate result of UO's breach of contract, Zhang has been damaged in an amount to be determined at trial including, but not limited to, the following: costs of

28 – AMENDED COMPLAINT

litigation, attorney's fees, emotional distress, and all other forms of economic, compensatory and punitive damages.

167.

Zhang sustained substantial monetary and non-monetary damages as a direct and proximate result of UO's breach of contract.

**PRAYER FOR RELIEF**

Plaintiff Yongli Zhang prays this Honorable Court for judgment against Defendants, jointly and severally, and respectfully demands economic damages, liquidated damages, compensatory damages, punitive damages, reasonable attorney's fees, pre-judgment interest, court costs, and any other relief that this Court deems just and equitable.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

29 – AMENDED COMPLAINT

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Yongli Zhang hereby demands a jury trial.


DATED this 3rd day of May, 2018.


GRIGGS LAW GROUP, P.C.

By:    /s/David H. Griggs
David H. Griggs, OSB No. 982436
e-mail: david@griggslawpc.com
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Telephone:  (971) 228-8110
Fax:  (971) 327-6735
Trial Attorney:  David H. Griggs


THE EMPLOYMENT LAW GROUP, P.C

/s/Adam Augustine Carter (to be admitted *pro hac vice*)
Bar No.: VA 32722
/s/R. Scott Oswald (to be admitted *pro hac vice*)
Bar No.: VA 41770
The Employment Law Group, P.C.
888 17th St. NW, 9th floor
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
ACarter@employmentlawgroup.com
SOswald@employmentlawgroup.com