**Liani J. Reeves, OSB No. 013904**
lreeves@bullardlaw.com
**Kalia J. Walker, OSB No. 154434**
kwalker@bullardlaw.com
Bullard Law
200 SW Market Street, Suite 1900
Portland, OR  97201
503-248-1134/Telephone
503-224-8851/Facsimile

Attorneys for Defendants University of Oregon and Yue Fang

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| DR. YONGLI ZHANG,<br><br>    Plaintiff,<br><br>v.<br><br>**UNIVERSITY OF OREGON, and YUE FANG,**<br><br>    Defendants. | Case No. 6:18-cv-00232-MK<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

  Judge Kasubhai carefully considered all of the evidence and the lack of evidence in the record and came to a well-reasoned decision based on controlling law and facts.  Accordingly, Defendants respectfully request that Judge Kasubhai's Findings and Recommendations be adopted by the Court.

## I.    INTRODUCTION

Plaintiff offers seven arguments in objection to the Findings and Recommendation (the "F&R") (ECF No. 50).  Defendants will respond to each below.  In summary, Plaintiff's objections do not accurately reflect Judge Kasubhai's analysis, the facts in the record, or the applicable law.

## II.    ARGUMENT

**1.    The F&R properly analyzed and rejected Plaintiff's continued attempts to ignore Supreme Court precedent in order to save his untimely claims.**

To revive his untimely claims under Title VII and ORS 659A, Plaintiff continues to try to convince this Court to disregard the United States Supreme Court decision in *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980), a case analogous to the one here.  He argues that his claims did not accrue until January 11, 2017 when the University's appeal process ended.  But the Provost's decision denying Plaintiff tenure was issued over a year prior in May 2016.  Plaintiff attempts to distinguish the Provost's tenure decision in May 2016 from the Board of Trustees decision in *Ricks*, arguing that the Provost's decision was just one of many decisions before the President's final determination. That argument lacks merit.  First, the F&R properly concluded that the Provost's decision denying Plaintiff tenure was analogous to the Board of Trustees' decision denying tenure in *Ricks*. ECF No. 50 at 15-16. The relevant facts in *Ricks* are no different than the case here—it was just a different body that made the decision to deny tenure and a different appeal body that considered the plaintiff's appeal of that decision. That does not change the result in this case—that the decision made by a body with authority to grant or deny tenure (in this case, the Provost; in *Ricks*, the Board of

Trustees) triggered the statute of limitations regardless of how one may appeal the decision. If Plaintiff's argument is correct, he could prevent the statute of limitations from running by simply not appealing the Provost's decision and thereby preventing the University's President from ever rendering a decision on the appeal. Thus, consistent with *Ricks*, the statute of limitations should start running when the decision to deny tenure is made, not when the appeal of that decision concludes.

Second, the facts in the record conclusively show that the Provost has authority over tenure decisions. Plaintiff's Collective Bargaining Agreement (CBA), the Provost's Academic Affairs website, and the Lundquist College of Business policy on Tenure and Promotion all state that the Provost makes the decision to award or deny tenure. Def's Reply at 8-10. Plaintiff testified that he either reviewed these documents or understood they applied to his tenure process. *Id.* As the F&R points out, Plaintiff also knew the Provost had plenary authority on his tenure promotion. ECF No. 50 at 15.

Judge Kasubhai analyzed the similarities between the Board of Trustees decision in *Ricks* and the present case and determined that the Provost's decision was the final, operative decision date. The appeals process referenced in the May 2016 letter did not toll the statute of limitations but was simply an opportunity to appeal a decision that the Provost already made, just as the Plaintiff in *Ricks* had an appeal remedy.

Finally, Plaintiff also argues that the F&R "make[s] bad law and create[s] confusion" without offering any legal authority in support of his conclusory statement. There is no confusion created by the F&R. To the contrary, the F&R simply applies the binding law and a clear test articulated by the Supreme Court in *Ricks*. Under *Ricks* and the F&R, there is a bright line rule: the statute of limitations starts running when the

decision to deny tenure is made by a person with authority to make that decision – regardless of whether that decision may be appealed. Plaintiff's objections are without merit and the Court should adopt the F&R's recommendation to grant Defendants' motion on Count I and Count II.

> **2.      The F&R properly found that Plaintiff's retaliation claims could not be supported by the evidence.**

Plaintiff's second objection argues that Plaintiff could not be on notice of his retaliation claims brought under Title VII and Oregon law because his protected activity happened *after* the adverse employment action.  That is exactly the reason why Plaintiff's retaliation claims fail.  It is not a matter of whether he had *notice* of retaliation claims.  Plaintiff did not have notice of any retaliation claims because he did not engage in protected activity that would trigger a retaliation claim.

Plaintiff's "notice" argument appears to rely on an assumption that the President, not the Provost, makes the tenure decision at the University. But as discussed above, Judge Kasubhai properly determined that the relevant University policies and controlling CBA establish that it is the Provost who makes the tenure decision.  All the President can do is consider an appeal of that decision – if an appeal is filed.  That is consistent with Supreme Court precedent that rejects Plaintiff's statute of limitations argument. Accordingly, Plaintiff's July 2016 appeal letter which he characterizes as a "complaint of discrimination" cannot form the basis of a retaliation claim because the decision to deny tenure was already made by the Provost in May 2016.  Plaintiff's unwillingness to accept Judge Kasubhai's analysis and findings does not make the F&R confusing or flawed regarding his retaliation claim on this basis.

**3.      Plaintiff's argument that it was "only a matter of weeks" between the Provost's tenure denial letter and Plaintiff's appeal does not impact the analysis.**

Plaintiff also argues that it was "only a matter of weeks" between the tenure denial letter and Plaintiff's appeal.  Plaintiff is correct on that factual issue.  However, the timing of Plaintiff's appeal does not affect the Court's analysis.  Regardless of when Plaintiff submitted his appeal letter, it was after the tenure decision had already been made, negating any argument that the decision was retaliatory.  In other words, it does not matter whether Plaintiff's appeal letter was sent one day after the Provost's decision, or one year after the decision.  Either way, the decision to deny tenure could not be in retaliation of the appeal because the decision was made before anyone at the University even knew of the appeal.  The Court should therefore adopt the F&R's recommendation to dismiss Plaintiff's Title VII and Oregon retaliation claims.

**4.      The F&R correctly found that Dr. Pardoe is not a valid comparator.**

Plaintiff asserts that the F&R incorrectly found that Dr. Iain Pardoe was not a proper comparator because Dr. Fang "must have been involved in reviewing Pardoe's tenure application" at some point in Dr. Pardoe's tenure review. Putting aside the obvious speculation relied upon by the Plaintiff in that statement, whether and how Dr. Fang may or may not have been involved in Dr. Pardoe's tenure review is not the main factor regarding whether Dr. Pardoe was an appropriate comparator.  Dr. Pardoe applied for tenure ***eight years*** before Plaintiff and the circumstances surrounding their tenure reviews were not sufficiently similar for Dr. Pardoe to be an appropriate comparator.  *See Tapp v. St. Louis Univ.*, 78 F. Supp. 2d 1002, 1016 (E.D. Mo. 2000) (holding that another professor was not similarly situated to plaintiff when a tenure review

Page 5    DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

committee was different, the school had different administration, and the decisions were separated by six years). Dr. Coltrane was not the University's Provost in 2007, so the ultimate decision maker was different. Dr. Terborg was not the Lundquist College of Business Dean. *See* Walker Decl., Ex. 1. Dr. Coltrane also testified that tenure standards evolve over time as universities compete to improve the programs offered to students. Def's Reply at 14.

Moreover, even if Dr. Fang was on a subsequent tenure review committee for Dr. Pardoe, Plaintiff and Dr. Pardoe did not share any common reviewers at the Department Committee level. This is notable because Plaintiff claims it was the OBA Department Committee's negative recommendation (allegedly orchestrated by Dr. Fang) that tainted his entire tenure application process.  Plaintiff and Dr. Pardoe are not proper comparators when Dr. Fang did not participate in the OBA Department's review and recommendation regarding Dr. Pardoe's tenure application. *See Martin v. Auburn Univ. Montgomery*, 908 F. Supp. 2d 1259, 1268-69 (M.D. Ala. 2012) (professors were not similarly situated when tenure cycles were separated by six years, "the three tenured faculty who voted at the initial stage were different," and only two of the eight members of a subsequent committee were the same).

Any subsequent overlap in reviewers at later stages does not make Dr. Pardoe similarly situated to Plaintiff. The *composition* of tenure reviewers in each case was different and both the College and University had different administration officials in place.  "When different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects." *Harvey v. Anheuser-Busch, Inc.,* 38 F.3d

968, 972 (8th Cir. 1994) (internal citation and quotations omitted). The F&R properly

found that Dr. Pardoe was not a valid comparator.[1]

### 5. The F&R properly concluded that a 30-month gap is attenuated to infer a retaliatory motive.

Plaintiff acknowledges that there was a 30-month gap in between the time

of his alleged refusal to add Dr. Fang's name to a paper and Plaintiff's tenure review

process.  Moreover, Plaintiff provided no evidence to support his claim that Dr. Fang

retaliated against him other than temporal proximity and speculation. The F&R

properly found that Plaintiff's reliance on temporal proximity between these two events

was not sufficient to defeat summary judgment.  The F&R notes that the Supreme Court

"has made it clear that the temporal proximity must be very close" to establish the

causation element of a prima facie case. ECF No. 50 at 21 (internal quotations and

citation omitted).  Plaintiff fails to offer any legal authority to show that the Court

should reject the F&R's finding that a 2 ½ year gap is too long to establish causation.

The F&R cites several cases where courts have held that 1-2 years between the protected

activity and adverse action are too long to establish a prima facie case of retaliation.

Plaintiff is not entitled to present his retaliation theory to a jury when he cannot

establish causation as a matter of law and offers nothing more than speculation in

---

[1] Plaintiff argues that Dr. Fang's declaration that he was not on Dr. Pardoe's review committee was somehow "unfair" because Defendants' instructed Dr. Fang not to answer questions related to the confidential tenure process of other faculty. Plaintiff did not challenge Defendants' objections to questions on that issue or move the Court to compel. Further, Plaintiff did not ask whether Dr. Fang served on the departmental review committee during 2006-2007.   Defendant's objections were simply intended to preserve the confidentiality of other faculty member's confidential records.

support of his claim.  Further, there is no evidence that supports Plaintiff's assertion

that "the Departmental Committee review of the Plaintiff's tenure application in Fall

2015 was Fang's first opportunity to take his revenge."  As an initial matter, Plaintiff

fails to show that there was any "revenge" to take.  And even if there were, Plaintiff

provides no evidence at all that such revenge could not have been taken sooner.  Plaintiff

cites nothing to support his assertion.

> ### 6.      Plaintiff does not offer any evidence that Dr. Fang exercised undue influence in his tenure review process.

Plaintiff claims that the F&R fails to consider the influence Dr. Fang

allegedly had on the Department Committee because he was the only statistician.

However, Judge Kasubhai addressed and rejected this argument in the F&R. ECF No. 50

at 18-19. In support of his objection, Plaintiff relies on Dr. Murthy's testimony that Dr.

Fang authored the initial draft of the Department Committee letter and made

recommendations regarding the cohort analysis. However, he ignores Dr. Murthy's

testimony that Dr. Fang "***never*** had even once [sic] any negative comment…" about

Plaintiff's tenure application. ECF No. 50 at 19 (emphasis added). Moreover, it was Dr.

Murthy who urged the Department Committee to perform the cohort analysis that

Plaintiff takes issue with, not Dr. Fang. Def's MSJ at 33. Plaintiff complains that the

F&R glosses over the way the cohort analysis was "manipulated and not done fairly," but

he offers no evidence that shows Dr. Fang improperly influenced the Department

Committee, or any other level of tenure review, to unlawfully deny his promotion to

tenure. Def's MSJ at. 30.

DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS
AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT

**7.    Professor Jacobs' opinion does not impact the F&R.**

Finally, Plaintiff argues that the F&R fails to take account of the expert report of Professor Frederic Jacobs "which concludes that the consideration of Plaintiff's tenure application was unfair[.]" Pl's Objections at 6.  Professor Jacobs' opinion need not be addressed because his opinion has no bearing on the analysis.  Whether or not the process was fair is not the issue to be decided by the F&R or this Court.  The relevant analysis is whether the tenure decision was made with discriminatory or retaliatory motive.  The Court properly analyzed the case and found that there is not sufficient evidence of either in the record.

### III.    CONCLUSION

For the reasons stated above, the Court should reject all of Plaintiff's objections and adopt Magistrate Judge Kasubhai's F&R.

DATED:  November 8, 2019

By s/Kalia J. Walker
Liani J. Reeves, OSB No. 013904
lreeves@bullardlaw.com
Kalia Walker, OSB No. 154434
kwalker@bullardlaw.com
503-248-1134/Telephone
503-224-8851/Facsimile
Attorneys for Defendants
University of Oregon and Yue Fang

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2019 I served the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE ON CROSS-MOTIONS FOR SUMMARY JUDGMENT on:

> David Griggs
> Griggs Law Group PC
> 4900 SW Griffith Drive, Suite 165
> Beaverton, OR  97005
>
> Adam Carter
> R. Scott Oswald
> The Employment Law Group, PC
> 888 17th St. NW, 9th Floor
> Washington D.C., DC 20006

☑      by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

☐      by **mailing** a true and correct copy to the last known address of each person listed.  It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the U.S. Postal Service in Portland, Oregon.

☐      by causing a true and correct copy to be **hand-delivered** to the last known address of each person listed.  It was contained in a sealed envelope and addressed as stated above.

☐      by causing a true and correct copy to be delivered **via overnight courier** to the last known address of each person listed.  It was contained in a sealed envelope, with courier fees paid, and addressed as stated above.

☐      by **faxing** a true and correct copy to the last known facsimile number of each person listed, with confirmation of delivery.  It was addressed as stated above.

☐      by **emailing** a true and correct copy to the last known email address of each person listed, with confirmation of delivery.

s/ Kalia J. Walker
Liani J. Reeves, OSB No. 013904
Attorneys for Defendants
University of Oregon and Yue Fang

Page 1    CERTIFICATE OF SERVICE